UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ESSEX INSURANCE COMPANY,          )
                                  )
            Plaintiff,            )
                                  )
      v.                          )     No. 4:06-CV-1305 CAS
                                  )
KERRY JOHN HAMPTON, et al.,       )
                                  )
            Defendants.           )

## MEMORANDUM AND ORDER

This declaratory judgment matter is before the Court on plaintiff Essex Insurance Company's ("Essex") motion for summary judgment. Essex seeks declarations that an insurance policy it issued to defendant Goedeker Television Co. ("Goedeker") provides no coverage to Goedeker in an underlying lawsuit filed by defendants Arthur and Harriet Kanofsky, and that Essex has no duty to defend Goedeker or to pay any sum Goedeker may become obligated to pay in connection with that lawsuit. Goedeker opposes the motion and it is fully briefed. For the following reasons, the Court will deny the motion for summary judgment.

**Factual Background**.

The underlying facts which give rise to this action are not in dispute as relevant to this case. On June 3, 2004, defendant Kerry Hampton purchased a mattress and box springs from Goedeker's retail store located on Manchester Road in St. Louis County, Missouri. Goedeker's employees loaded the mattress and box springs into the back of Mr. Hampton's 1991 GMC Sonoma pickup truck, and Mr. Hampton set off, perhaps looking forward to a good night's sleep on his new purchase. Mr. Hampton was traveling northbound on Highway 270 near the intersection of Highway

40 in west St. Louis County when the mattress came loose and fell from the truck onto the highway surface.

At the same time, Arthur and Harriet Kanofsky were traveling northbound on Highway 270 in their vehicle, with Mr. Kanofsky driving and Mrs. Kanofsky in the front passenger seat. When the mattress fell from Mr. Hampton's truck, Mr. Kanofsky took evasive action by swerving to avoid a collision with the mattress and other vehicles on the highway. Mr. and Mrs. Kanofsky allege that they were injured during the evasive maneuver. Subsequently, the Kanofskys filed a lawsuit against Mr. Hampton and Goedeker in the Circuit Court of St. Louis County, Missouri, Cause No. 05CC-4749 (the "Kanofsky suit"). The Kanofsky suit alleges that the Kanofskys suffered serious personal injuries as a result of negligence on the part of Mr. Hampton and Goedeker in connection with loading and securing the mattress and box springs in Mr. Hampton's truck.

The Kanofskys' petition specifically alleges that Goedeker was negligent in that it: (a) carelessly and negligently failed to secure the load in Mr. Hampton's vehicle; (b) carelessly and negligently failed to take appropriate action to secure the object in Mr. Hampton's vehicle; causing the object to be dislodged and land in the Kanofskys' lane of traffic; (c) carelessly and negligently informed Mr. Hampton that non-skid plastic would insure that the box spring and mattress would not be dislodged from the bed of Mr. Hampton's vehicle; and (d) carelessly and negligently failed to take appropriate action to secure the object in Mr. Hampton's vehicle by failing to have sufficient rope or twine to secure the object. See Amended Petition for Damages at 7, Ex. 1 to the Complaint.

On the date of the incident, Goedeker was insured under a comprehensive general liability policy of insurance issued by Essex, Policy No. 3CH9497-01 (the "Policy" or the "Essex Policy"). Goedeker made a claim with Essex for coverage under the Policy. Essex is currently defending

Goedeker in the Kanofsky suit under a reservation of rights. Essex filed the instant action seeking a declaration that it is not obligated to defend or indemnify Goedeker in the Kanofsky suit, on the basis of certain exclusions in the Policy.

**Legal Standard**.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**.

## I.

As jurisdiction of this case is based on diversity of citizenship, the Court applies the substantive law of the forum state in which it sits. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). Federal courts are "bound to accept the interpretation of [state] law by the highest court of the State." Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 488 (1976). If the Missouri Supreme Court has not yet addressed a particular issue, the Court "may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998) (citations and quotations omitted). "Decisions from Missouri's intermediate appellate court (the Missouri Court of Appeals) are 'particularly relevant,' and must be followed when they are the best evidence of Missouri law." Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005) (cited case omitted).

Under applicable Missouri law, the interpretation of the meaning of an insurance policy is a question of law. Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 547 (8th Cir. 2003). "In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995).

"Where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. If the language is ambiguous, it will be construed against the insurer. An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993) (en banc) (internal citations omitted).

"Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." Nixon v. Life Investors Ins. Co. of America, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984). An interpretation of insurance policy language which may render a portion of the policy illusory "should not be indulged in." Cano v. Travelers Ins. Co., 656 S.W.2d 266, 271 (Mo. 1983) (en banc). If an insurance "contract promises something at one point and takes it away at another there is an ambiguity." Behr v. Blue Cross Hosp. Service, Inc., of Mo., 715 S.W.2d 251, 256 (Mo. 1986) (en banc).

"Exceptions and limitations contained in insurance policies should be construed strictly against the insurer." Standard Artificial Limb, 895 S.W.2d at 209. "When an insurance company seeks to escape coverage based on policy exclusions, the burden is on it to establish the applicability of the exclusions." Superior Equip. Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 482 (Mo. Ct. App. 1998). "Unless an insurance contract is so clear in its meaning that as a matter of law it precludes a plaintiff's recovery, a motion for summary judgment based on the contract should be denied." Northland Ins. Cos. v. Russo, 929 S.W.2d 930, 934 (Mo. Ct. App. 1996)

**II**.

The Policy issued to Goedeker is a commercial general liability policy with effective dates of August 2, 2003 through August 2, 2004. The pertinent policy provisions are as follows:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this

insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance;

    . . . .

2. Exclusions.

This insurance does not apply to:

    . . . .

    g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading or unloading."[1]

    . . . .

SECTION III - LIMITS OF INSURANCE

    1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay . . .

    . . . .

    3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

    . . . .

SECTION V - DEFINITIONS

    . . . .

16. "Products-completed operations hazard":

---

[1] The language of this exclusion is set forth in the Combination General Endorsement, M/E-001 (4/00), which amends the Policy.

      a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" . . .

  . . . .

      b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, **unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured**;

  . . . .

(Emphasis added).

Other relevant policy provisions include the Delivery &/or Installation Exclusion Endorsement, 011-1009(7-80), which provides:

> The coverage under this policy does not apply to "bodily injury," "property damage," personal injury," "advertising injury," or any injury, loss or damage arising out of delivery and/or installation of household appliances.

The Combination General Endorsement M/E-001 (4/00) also provides in part,

> Duty to Defend: Where there is no coverage under this policy, there is no duty to defend.

### III.

Essex contends that the Policy excludes coverage for the losses alleged in the Kanofsky suit against Goedeker for two reasons. First, Essex claims that the Aircraft, Auto or Watercraft exclusion (the "Auto exclusion") excludes coverage for losses from the loading of and use of an automobile, and the Kanofsky suit alleges that the Kanofskys suffered personal injuries as a result of the negligence of Mr. Hampton and Goedeker in the loading and use of Mr. Hampton's vehicle. Second, Essex claims that the Delivery &/or Installation Exclusion Endorsement excludes coverage for losses

7

from the delivery and/or installation of household appliances, and therefore excludes any act or omission by Mr. Hampton and/or Goedeker in connection with the Kanofskys' claimed injuries.

Goedeker responds that the Policy is ambiguous and therefore the motion for summary judgment should be denied. Goedeker states that the Auto exclusion attempts to exclude coverage for damages or injuries relating to ownership and use of a vehicle, and defines "use" includes loading and unloading. Goedeker points out that, conversely, the "Products-completed operations hazard" provides insurance coverage for injuries or damages that arise out of a condition that was created by the loading or unloading, by an insured, of a vehicle that was not owned or operated by the insured. Goedeker cites on Northland Insurance Cos. v. Russo, 929 S.W.2d 930, in which the Missouri Court of Appeals held that the insurance company was not entitled to summary judgment where the policy contained conflicting provisions almost identical to those in the Essex Policy.

Essex replies that "the products-completed operations definition simply places the loading & unloading with respect to non-owned vehicles by an insured within the Product Completed Operations Hazard, as opposed to an 'operation in progress.'" Essex Surresponse at 1. Essex states that the products-completed operations hazard definition "does not *create* coverage, but merely defines whether the bodily injury/property damage (BI/PD) falls within the Premises, Operations or Products Completed Operations Hazards. Once Essex determines where the BI/PD falls, the policy then performs to determine if coverage exists within its insuring and/or exclusionary language." Id. at 2. Essex contends that "even though the bodily injury/property damage falls within the Products Completed Operations Hazard, it is not covered due to the auto exclusion" which states that there is no coverage for bodily injury or property damage arising out of the ownership, non-ownership or use of any auto. Id.

The Court finds that the Northland decision is particularly relevant, and is the best evidence of Missouri law. See Bockelman, 403 F.3d at 531. In Northland, the insurer sought a declaration that it had no duty to provide coverage for claims against its insured arising out of a motor vehicle accident in which a trailer being towed behind a dump truck separated from the truck, and a backhoe which was on the trailer came off and struck the deceased's car. 929 S.W.2d at 931-32. The underlying negligence claims included that the injuries were caused by the insured's failure to properly connect the trailer to its dump truck and to properly secure the backhoe to the trailer. Id.

Northland moved for summary judgment, arguing as does Essex in this case, that the automobile exclusion provision precluded coverage to its insured in the underlying personal injury case. Id. The automobile exclusion contained in the Northland insurance policy is the same in all relevant particulars as the Auto exclusion in the Essex Policy. The Northland policy excluded coverage for: "'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'" Id. The Northland policy also had a "Products-completed operations hazard" section similar to the one in the Essex Policy, which included coverage for all bodily injury and property damage occurring away from premises the insured owns or rents and arising out of the insured's product or work. Id. at 933. Like the Essex Policy, this section excluded coverage for bodily injury or property damage arising out of the transportation of property, unless the injury or damage arose out of a condition in or on a vehicle created by the loading or unloading of it.[2] Id.

---

[2]Unlike the Essex Policy, the Northland policy did not specify that the vehicle must belong to someone other than the insured.

9

The Missouri Court of Appeals found that even though "Section 1-Coverages" portion of the Northland insurance policy did not explicitly state that the "Products-completed operations hazard" coverage was part of the policy protection bought by the insured, other parts of the policy clarified that such coverage was clearly intended. 929 S.W.2d at 933. Specifically, the court examined the "Limits of Insurance" section in the Northland policy which stated, "The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of 'bodily injury' and 'property damage' included in the 'products-completed operations hazard.'" Id. The same language is in the Essex Policy. Based on this language, the court concluded that any construction of the policy must include consideration of the "Products-completed operations hazard" coverage. Id.

The court found an ambiguity in the Northland policy because the "Products-completed operations hazard" section applied to injury or damage arising out of the transportation of property which "arises out of a condition in or on a vehicle created by the 'loading or unloading' of it," id. at 934, but that coverage was then taken away by the automobile exclusion, which excluded coverage for an injury or damage arising out of the use of an insured's auto, including "loading or unloading." Id. The court reasoned that the ambiguous policy, construed against Northland, provided coverage for a condition created by the "loading or unloading" of a vehicle as a matter of law, and the allegations of negligence presented in the underlying action against the insured raised an issue of material fact regarding the Products-completed operations hazard coverage. Id. Therefore, the court determined that summary judgment for the insurer was improper.

The Court concludes that the Northland decision is controlling of the issues presented by the summary judgment motion in this case and should be followed. The Missouri cases cited by Essex

in its memorandum in support of the motion for summary judgment are not persuasive because they do not address policies containing the same combination of automobile exclusion and products-completed operations hazard that are present in this case and Northland. In its reply memorandum Essex cites two decisions, neither of which mandate a different result. First, Essex cites Bolton v. Lake States Insurance Co., No. 203549, 1999 WL 33455133 (Mich Ct. App. 1999), an unpublished per curiam decision which declined to follow Northland as contrary to Michigan law. The Bolton decision is not binding on this Court and Essex fails to offer any reasoned explanation why it should be followed rather than the Missouri Court of Appeals' Northland decision.[3]

Essex also cites Hawkeye-Security Ins. Co. v. Davis, 6 S.W.3d 419, 422 (Mo. Ct. App. 1999), which rejected a claim that a commercial general liability policy insured a home builder on claims for breach of contract and warranty in connection with construction defects in a house. The purchasers of the defective house argued that the policy's products-completed operations hazard language was not exhaustive and should be read expansively to cover their claims against the builder. The purchasers also argued that the policy was ambiguous because the builder was charged for products-completed operations hazard but was not provided a "coverage part" for that risk. The court rejected these arguments. Id. at 424. Focusing on the policy's "Limits of Insurance" section, which is identical to that of the Essex Policy, the court concluded that the products-completed operations hazard was not a separate policy but rather a sub-part of the entire policy, which described a coverage within the policy for the same type of injuries or damages covered by the rest of the policy, but for a different period of time or location. The court concluded that the policy was not

---

[3]The Court notes that the Bolton decision did not quote the products-completed operations hazard policy language at issue, and therefore it cannot be determined whether similar policy provisions were involved.

11

missing a coverage part, the insurer had not charged the builder for coverage the policy did not provide, and therefore the policy was not ambiguous by promising something at one point and taking it away at another. Id. at 425 (distinguishing Northland). Finally, the Court concluded that the policy did not provide coverage for the business risks of defective construction or breach of contract or warranty because the breach of a defined contractual duty could not be considered an "occurrence" within the coverage of the policy. Id. at 426.

Hawkeye is distinguishable from the instant case because there is no contention here that the Policy is missing a coverage part, and there is no attempt to extend the Policy's comprehensive general liability coverage to unrelated breach of contract or warranty claims. In this case, Goedeker contends that an ambiguity exists in the Essex Policy because the occurrence involving the mattress falling off of Mr. Hampton's truck is specifically encompassed by coverage described in the Products-completed operations hazard, but the coverage is then taken away by the Auto exclusion.

The Court agrees with Goedeker that the Essex Policy is ambiguous because the Products-completed operations hazard portion of the Policy provides coverage for injury or damage that arises out of a condition in or on a vehicle not owned or operated by Goedeker, and that was created by the "loading or unloading" of the vehicle by any insured, but the coverage is taken away by the Auto exclusion. Under Northland, it is appropriate to construe this portion of the Policy against Essex. See Northland, 929 S.W.3d at 934.

The Court must now determine whether any of the negligence allegations in the Kanofsky suit present an issue of material fact regarding the Products-completed operations hazard coverage. See id. The Kanofskys have alleged that, inter alia, Goedeker was negligent in failing to secure the load in Mr. Hampton's vehicle and in having sufficient twine or rope to secure it. These allegations

12

present an issue of material fact regarding coverage under the Policy as construed by this Court and, as a result, the motion for summary judgment should be denied.

**IV**.

Essex also moves for summary judgment asserting that the "Delivery &/or Installation Exclusion Endorsement" excludes coverage for losses from the delivery and/or installation of household appliances, and therefore excludes any act or omission by Mr. Hampton or Goedeker in connection with the Kanofskys' claimed injuries. Goedeker argues in its opposition memorandum that the delivery exclusion conflicts with the Products-completed operations hazard provision, and also that the exclusion is inapplicable because a mattress and box springs are not household appliances.

Essex does not address the delivery exclusion in its reply memorandum, and therefore the Court finds that this argument is abandoned. Moreover, the Court finds that the exclusion is inapplicable. The term "household appliances" is not defined in the Policy. The dictionary definition of "appliance" is a "device, especially one operated by electricity and designed for household use." Webster's II New Riverside University Dictionary 118 (1988). A mattress and box springs do not meet the definition of household appliances but rather are bedding materials. The delivery exclusion therefore does not apply.

**Conclusion**.

For the foregoing reasons, the Court concludes that plaintiff Essex Insurance Company's motion for summary judgment on its declaratory judgment action should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Essex Insurance Company's motion for summary judgment is **DENIED**. [Doc. 14]

                                              _____
                                              **CHARLES A. SHAW**
                                              **UNITED STATES DISTRICT JUDGE**

Dated this  16th  day of July, 2007.